HARDY, Judge.
This is a suit by which plaintiff seeks to collect the sum of $258, being the amount of a check made and signed by the defendant. From a judgment in favor of plaintiff the defendant has appealed.
We think it desirable, because of the unusual nature of the case and the general lack of certainty which afflicted most of the testimony in the record, to set forth the principal recitals of the pleadings of the parties plaintiff and defendant.
Plaintiff’s petition alleged:
“1.
“That Mrs. J. M. Alexander, who resides at 3106 West Laurel Street in the City of Shreveport, Louisiana, is justly and truly indebted unto your petitioner in the sum of $258.00 with legal interest from July 1, 1554 and all costs of this suit.
“2.
“Petitioner avers that he advanced money to the defendant in the form of loans for a period of several months prior to July 1, 1954, on which date the defendant issued her check in the amount of $258.00 payable to ‘Cash’, and delivered the same to your petitioner with the request that he hold the same for a short time prior to depositing it in the bank.
“3. '
“Petitioner shows that in September the defendant authorized him to deposit the check in the bank, but that after doing so the defendant stopped payment, all of which will be more fully shown by the check which is attached to and made a part of this petition.”
Defendant made answer to the above allegations as follows:
*399 “1.
“That she admits her name and address; otherwise, the allegations of Article One of plaintiff’s petition are denied.
“2.
“That she denies the allegations of Article Two of plaintiff’s petition as written. That in this connection respondent shows that on or about July 1, 1954 the plaintiff came to her home and insisted and threatened her that unless she committed immoral acts with him on that occasion and in the future that he would look to her to pay certain monies advanced to her parents and brother. He admitted that she did not owe him anything or that she had received any money from him whatever. That she informed the plaintiff that she was not an immoral woman and that she would not commit any immoral acts with him then or at any other time in the future and that if he claimed $258.00 due by her people that she would issue him a check for that amount with the understanding that he would never come about her again. That she issued the check for the $258.00 due to the threats made by the plaintiff but she denies that she owes the plaintiff anything or issued the check for any money that she was due and owing to the plaintiff whatever.
“3.
“That she denies the allegations of Article Three of plaintiff’s petition. That on or about September 3rd or 4th, 1954, the defendant again came to your respondent’s home and threatened her that unless she committed immoral acts with him that he would file suit for monies that he claimed to have advanced to her parents and brother. He again admitted that she had not received any money from him whatever and that she did not personally owe him anything. That on or about September 7th or 8th, 1954 she stopped payment on the check for the simple reason that she had issued the check to get the plaintiff to leave her home and not because that she owed him anything and the additional fact that he had admitted upon several occasions that she did not owe him anything.”
On motion of plaintiff for judgment on the face of the pleadings a rule to show cause was issued, and judgment was rendered by the Judge of the City Court of the City of Shreveport, Caddo Parish, in favor of plaintiff as prayed. From this judgment defendant appealed and, after hearing on the appeal, we annulled the judgment and remanded the case for further proceedings. Bevis v. Alexander, La.App., 81 So.2d 113.
Pursuant to our decree the case was tried on the merits, and, as above noted, is now before us on defendant’s appeal from judgment in favor of plaintiff.
In our opinion in the above cited case we observed :
“A careful scrutiny of the pleadings has convinced us the effect of respondent’s answer is to urge failure of consideration for the instrument sued upon.”
We are now confronted with the necessity of determining whether the record before us sufficiently sustains defendant’s plea of want of consideration. On trial below the check was introduced and plaintiff testified that it was given in payment of money loaned. The check, which defendant acknowledges she made and signed, when introduced in evidence was sufficient to make out a prima facie case, and the burden of proof then fell upon defendant requiring the presentation of sufficient evidence to cast doubt upon the reality of the consideration. This principle is well established and is clearly set forth in the opinion of the Supreme Court, and the cases cited in its opinion, in Moss v. Robinson, 216 La. 295, 43 So.2d 613, 617, in which the court declared:
“But if the defendant offers evidence which overcomes the prima facie case, that is, casts doubt upon the reality of *400 the consideration, the ultimate burden of proving consideration, by evidence that preponderates, is on the plaintiff!’ (Emphasis supplied.)
The application of the above principle requires that we examine and determine two questions; first, did defendant successfully offer evidence which cast doubt upon the reality of the consideration for the check, and, second, if we answer the foregoing question affirmatively, did the plaintiff successfully discharge his ultimate burden of proving consideration by a preponderance of the evidence?
Éxamination of the record before us is convincing on the point that defendant succeeded in raising a substantial doubt as to the reality and validity of the consideration. The doubt is established, not only by the testimony of defendant in which she positively denied any obligation to plaintiff, but by a number of strange and apparently unexplained circumstances surrounding the transaction, and by the testimony of the plaintiff himself.
Plaintiff testified that the check was given him in repayment of money which he had loaned to defendant at various times and in varying amounts. Plaintiff asserted that he had kept a record of these loans on the back of an envelope which he carried in his pocket and which he used to refresh his memory on trial of the case. Despite this assistance from a so-called record, we think it remarkable that plaintiff made no effort to testify with any certainty as to the amounts loaned on different occasions, and frankly admitted that he could not give any dates in connection with these advances. After testifying that he had advanced defendant money to the extent of $258, plaintiff testified as follows, on cross-examination :
“Q. Do you have any record, any written record whatever of the dates and the amounts that you 'advanced it? Now, I am speaking specifically of this check, Two Hundred Fifty-eight Dollars. A. Yes, I have the ones in my pocket that I wrote down. She said she wrote hers down.
“Q. What sort of a record is that? A. Why, it is just my personal record that I wrote down on the back of an envelope.
“Q. When did you make that record ? A. At the time she got the money from me.
“Q. Do you have the envelope? A. Yes, sir.
“Q. Where is it ? A. In my pocket.
“Q. Could I see it?”
Mr. Le Sage: “Go ahead.” (Whereupon the witness produced the requested document and tendered it to counsel for the defendant.)
By Mr. Coen.
“Q. Now, this is your record of the Two Hundred Fifty-eight Dollars? A. That is all I have, sir.
“Q. That you claimed to have loaned to Mrs. Alexander? A. I don’t claim it; I did it.
“Q. I understand; but that is the only record you have? A. That is all I have except the check.
“Q. Let me have that again. I am not going to destroy it. Mr. Bevis, I am going to ask you is this the different amounts that you advanced to Mrs. Alexander, you say, from different times? A. Yes, sir. Fifty Dollars, One Hundred Dollars, and just like she picked it up, sir.
“Q. And that is the only record you have? A. It is all I have; yes, sir.
“Q. Now, you say that was advanced to her in cash money? A. Yes, sir. I didn’t charge her anything for the labor. I did a lot of labor, but didn’t charge anything.
“Q. I understand; but that was advanced in the way of cash money. Is that right? A. Yes, sir.
*401 “Q. And, of course, you couldn’t give us the dates that this money was advanced to her? A. I don’t think I could, sir.”
Previously, on direct examination, plaintiff had testified as follows:
“Q. When had you lent this money to her? A. About — I would say about two months, a part of it, the One Hundred Dollars, about two months before that. She gave me good reasons for it, and I had lent her money before, her and her husband. And she paid me cheerfully and signed the check. And I put the check in on something that I owed.
“Q. I show here on the rear of the check the word, the name and signature, ‘John Bevis’. Is that your signature? A. Yes, sir. I always leave my initial out. I just sign ‘John Bevis.’
“Q. Did you present this check to the bank for payment? A. Yes, sir, out at the Pioneer Bank, and they turned it down the first time. She called down there and said she had the money but she hadn’t okayed the check. And she asked me to hold this check until she did okay it. And I did hold the check. And I kept on and kept on, and one Saturday morning I go over and told her that I was about to wear the check out. I was soiling it and wanted her to do something about it, and told her I would go with hér down there. And she said, no, she didn’t need me, she would go. And she carried the boys with her. And I stayed there at her house. And the lady that was here before was at her house. And I showed her this check. She is not here this morning.
“Q. The check is dated July 1, 1954. Was that the date that she gave it to you? A. Yes, sir.
“Q. When was the date that you carried it to the bank, if you recall, approximately? A. I really don’t — I couldn’t tell you definitely the time, but, anyhow, it was after the period of time that I kept asking her if she had okayed it. She said she just hadn’t had time, Mr. Bevis, was the word she used.
“Q. Why was it that she had to okay it; do you know? A. Yes, sir. She told me that she had had her money on saving, and they wouldn’t pay it down there until she did okay it. And she told me the reason she wanted to borrow the money was that she had put up $1,500.00 each for her two little boys for their education, and that was— if I can go into that — was why I let her have it.” (Emphasis supplied.)
Defendant denied having received any money from plaintiff with the exception of $100 which was given to her by plaintiff as a loan to her brother, which fact is conclusively established by the testimony of all witnesses with any knowledge of this particular item.
It must be borne in mind that the check sued upon bears the date of July 1, 1954. Despite plaintiff’s testimony, as above quoted, that he put the check in on something he owed and that he presented the check to the Pioneer Bank for payment where it was turned down, after which he continued to hold the check for a considerable period of time, it is noted from the bank stamps on the reverse of the check that it was presented to the Pioneer Bank and accepted by them on September 11, 1954. The stamps further indicate that in due course the check was received-by the Commercial National Bank, the drawee, on September 13, 1954, at which time it must be assumed that payment was refused, in evidence of which the check bears several “Payment Stopped” stamps. It also appears from the bank stamps that the Pioneer Bank cancelled its previous endorsement. These stamps, as revealed by the instrument itself, are more than sufficient to contradict plaintiff’s testimony, and this circumstance gives added weight to defendant’s contention of lack of consideration.
*402 There are other facts established which bear consideration, namely, that defendant carried bank accounts, both savings and checking; that she had received a lump sum payment of $5,500 following her husband’s death and was receiving an additional payment of $5,000 over a period of ten years; that she was regularly employed by the Southwestern Gas & Electric Company in a secretarial or stenographic capacity, and that she had a regular monthly income, according to her uncontroverted testimony, of approximately $425 per month. These facts have a bearing upon defendant’s insistence that she had no need to borrow money from plaintiff, and, indeed, had not borrowed money from him, which bearing, though indirect, is nonetheless highly corroborative.
In consideration of the above factors, as well as other details which we think it unnecessary to discuss in this opinion, we can only conclude that defendant has successfully raised a very real doubt as to the validity of the consideration for the instrument sued upon. This being so, as we have above observed, the burden of proof then shifted to plaintiff.
Cayeful examination completely fails to justify the finding that plaintiff discharged this ultimate burden. Indeed, there is nothing which adds to the strength and credibility of his original prima facie proof, and it must, therefore, be concluded that plaintiff failed to satisfactorily establish a real consideration by a preponderance of the evidence.
Because we believe the reasons above set forth dispose of the issues, we think it unnecessary to address ourselves to any discussion of defendant’s affirmative defense of coercion. We deem it sufficient to observe that, despite what we regard as the very strange and inexplicable circumstances of the transaction, the evidence on this particular point, consisting merely of assertion by one party and denial by the other, does not justify a conclusion and, in any event, the determination of this proposition is unnecessary to dispose of the appeal.
For the reasons- assigned the judgment appealed from is reversed and set aside and there is now judgment in favor of defendant rejecting plaintiff’s demands at his cost.
GLADNEY, J., dissents.
Rehearing denied; GLADNEY, J., dissenting.